**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARRIE SUZANNE KLYSE, | No. C 10-05070 WHA |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## INTRODUCTION

In this social security appeal, plaintiff appeals the denial of disability benefits. Plaintiff's motion for summary judgment is **DENIED**, and the defendant's motion for summary judgment is **GRANTED**.

## STATEMENT

Plaintiff Carrie Suzanne Klyse filed an application for supplemental social security income in April 2008, alleging a disability onset date of February 27, 2007. The application was denied initially and on reconsideration. Plaintiff requested a hearing before an administrative law judge, and one was held in October 2009. Plaintiff and her daughter both testified. A vocational expert also testified at the hearing. In November 2009, the ALJ denied the claim for disability benefits. The Appeals Council denied plaintiff's request for review, making the ALJ's decision final (AR 1–4, 11–20). Plaintiff then filed this action for judicial review of the ALJ's decision.

The ALJ found that plaintiff had "the following severe impairments: degenerative disc disease of the lumbar and cervical spines; obesity; migraine headaches; pain disorder; and adjustment disorder." Those severe impairments, however, did not meet or medically equal any listed impairment. The ALJ then assessed plaintiff's residual functional capacity. The ALJ concluded that plaintiff was unable to perform past relevant work, but that she had the RFC "to perform sedentary work." The ALJ also concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC assessment (AR 13–16).

Plaintiff challenges the ALJ's determination of her mental impairments and his finding that her impairments did not meet or equal a listed impairment (Br. 8–16). Plaintiff also argues that her testimony regarding the limiting effects of her symptoms were supported by the record. Finally, plaintiff argues that the ALJ improperly posed hypothetical questions to the vocational expert during plaintiff's hearing (*id.* at 16–24). Defendant opposes plaintiff's motion and moves for summary judgment affirming the ALJ's decision (Br. 1). This order follows full briefing.

**ANALYSIS**

A decision denying disability benefits shall be upheld on appeal if it is supported by substantial evidence and free of legal error. Substantial evidence is "more than a scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). The court must consider the entire administrative record, including evidence that does not lend support to the ALJ's conclusion. Where evidence in the record is susceptible to more than one rational interpretation, the decision of the ALJ must be upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

1.  **DETERMINATION OF PLAINTIFF'S MENTAL IMPAIRMENTS.**

The Social Security Administration has established a five-step evaluation process for determining if an individual is disabled. At step two of this process, the ALJ determines if a claimant's medically determinable impairment is "severe" — meaning that it "significantly limits an individual's ability to perform basic work activities." If a claimant has a severe

impairment, the analysis proceeds to step three, where the ALJ determines whether a claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1 (AR 11–12).

### A.     Finding That Plaintiff's Impairments Were Severe.

Plaintiff argues that the ALJ erred by concluding that plaintiff's impairments were severe in his step two analysis, yet finding her impairments did not meet listed impairments in step three (Br. 9). Steps two and three, however, are distinct steps that are analyzed differently. A finding of a severe impairment at step two is based on limitation to work activities. This does not guarantee a finding of a severe impairment at step three, when the ALJ compares a claimant's impairments to those listed in Appendix 1. The ALJ's finding that plaintiff had severe mental impairments at step two thus does not undermine his finding that these impairments failed to satisfy step three.

### B.     Meets or Equals Listed Impairments.

Plaintiff argues the ALJ erred in finding that her impairments did not meet the requirements of listings under Section 12.04 (affective disorders) under Appendix 1. The ALJ's determination, however, was supported by substantial evidence and free of legal error.

Plaintiff argues that she should have been found to have a severe impairment in step three because she was diagnosed by a psychologist as having an adjustment disorder, mild anxiety, and depressed mood (Br. 10; AR 287). A reading of the listed impairments of Appendix 1 shows that a diagnosis standing alone is not sufficient. To meet the listing for an affective disorder under Section 12.04, plaintiff must show at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social function; (3) marked difficulties in maintaining concentration; or (4) repeated episodes of decompensation, each of extended duration.

The ALJ analyzed plaintiff's impairments under Section 12.04 and found that they did not cause at least two marked limitations, and that she had not experienced repeated episodes of decompensation. In support of this analysis, the ALJ noted that plaintiff cared for three young foster children from March 2009 to October 2009. She was also able to cook, do simple

household chores, read, listen to music, take walks, swim, and drive a car. The ALJ also found that based on plaintiff's testimony, she enjoyed spending time with family and friends and had community support (AR 14–15).

Plaintiff claims that the ALJ did not properly analyze her impairments under Section 12.04, citing to the following Social Security regulation:

> If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation to your ability to do basic work activities.

20 C.F.R. 404.1250a(d)(1). Plaintiff seems to imply that *any* other determination of the four elements other than the one outlined above warrants a finding of a severe impairment. Not so. The language of Section 12.04 clearly states that *at least two* of the elements must be found to be "marked." The ALJ found that this requirement was not met, thus he properly concluded that plaintiff's impairments were not severe under step three.

### C. Global Assessment Functioning Score.

Plaintiff argues that the ALJ erred by failing to address the fact that a psychological disability evaluation reported plaintiff to have a global assessment functioning score of 50–55. In her brief, plaintiff claims that this score indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood" (Br. 9). The plaintiff incorrectly categorizes her GAF score range. The GAF operates on a scale from 0 to 100. The definition plaintiff gives actually correlates to a GAF score of 31–40. A score of 51–60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. Text Revision 2000). Plaintiff misleadingly represents the implications of her GAF score. As her GAF score did not indicate a severe mental impairment, the ALJ did not err in failing to discuss the GAF in his decision.

4

### 2. DETERMINATION OF PLAINTIFF'S CREDIBILITY.

Plaintiff argues that the ALJ erred in finding plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms lacked credibility to the extent they were consistent with his RFC assessment. The ALJ's determination, however, was supported by substantial evidence. The ALJ noted that despite plaintiff's testimony about the limiting effects of her symptoms, she was able to engage in limited housework such and laundry and cooking, work in the garden, swim in her pool, and care for three young foster children in addition to her own three children. The ALJ also noted that despite the fact that plaintiff testified to persistent leg and arm pain, "treatment notes reflect[ed] several observations of normal gait and negative straight leg raising" (AR 16–17).

The ALJ also found that the plaintiff's representation of the frequency of her migraines was not corroborated by the record. During her administrative hearing, plaintiff testified that she visited the emergency room because of migraines at least one to two times a month (AR 49). The ALJ found the record to reflect only four overall ER visits since the alleged onset date. Plaintiff argues that she provided documentation of ER visits to Novato Hospital "days before the hearing" (Br. 18). This documentation is not reflected in the record. Plaintiff argues that the ALJ should have obtained her ER records from Novato Hospital. Plaintiff attempts to place the onus for providing medical documentation on the ALJ. In fact, the burden is on *plaintiff* to provide all evidence that demonstrates her disability. 20 C.F.R. 404.1512(a).

The ALJ's finding that plaintiff's testimony to the limiting extent of her symptoms lacked credibility was supported by substantial evidence and free of legal error.

### 3. HYPOTHETICAL QUESTIONS POSED TO THE VOCATIONAL EXPERT.

Plaintiff argues that the ALJ erred in presenting "incomplete and inaccurate hypothetical [questions] to his vocational expert" because all of the ALJ's questions assumed she could lift at least ten pounds, while plaintiff's "daughter testified her mother was limited to lifting about 7 pounds" (Br. 24).

There is no indication that the ALJ erred in posing hypothetical questions to the VE. Plaintiff is correct that each of the ALJ's hypothetical questions involved a person who could lift

5

at least ten pounds. Plaintiff's daughter, however, never definitively indicated that her mother could not lift more than seven pounds. When asked during the hearing how much weight her mother could carry, plaintiff's daughter first answered "[u]nder 25 pounds," before changing her answer to "[u]nder 20 pounds." The ALJ then identified an unknown object at the hearing, saying that it "weighs about seven" pounds, to which plaintiff's daughter replied that her mother could not carry "much more than that" (AR 69–70).

Regardless, this estimation of plaintiff's capability is not supported by the record. The consultative examiner, Dr. Chen, concluded that plaintiff was capable of lifting and carrying "50 pounds occasionally and 25 pounds frequently" (AR 272). The ALJ did not err by posing hypothetical situations involving an individual who could lift at least ten pounds.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED**, and defendant's motion for summary judgment is **GRANTED**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated: November 28, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6